SUNDAY LAKE IRON COMPANY *v*. CITY OF WAKEFIELD.

1. Taxation—Injunction—Irreparable Injury.

   The statutory prohibition against enjoining the assessment or collection of general property taxes will be applied except in cases where the denial of injunctive relief would result in irreparable injury (1 Comp. Laws 1929, § 3507).

2. Same—Injunction—Cross Bill by Tax-Collecting Officers—Adequate Remedy at Law.

   The fact that defendant municipalities and their tax-collecting officers have filed cross bills in plaintiff taxpayer's suit to enjoin collection of certain parts of taxes assessed would not preclude them from claiming that plaintiff has an adequate remedy at law therefor where stipulation filed reserves such defense as to such taxes (1 Comp. Laws 1929, § 3507).

3. Same—Valuation—Mining Properties—Home-Rule Cities.

   Where board of review of home-rule city had ·the problem of accepting the valuation placed upon taxpayer's mining property by the State geologist or that of another person employed by the city assessor, it was not necessarily fraudulent on the part of the board of review to fail to accept the recommendation of the State geologist, notwithstanding his valuation was adopted by the State tax commission some 3 months later (1 Comp. Laws 1929, § 3444, as amended by Act No. 159, Pub. Acts 1945).

4. Same—Avoidance of Fractions in Computation.

   Pursuant to the general property tax law, assessing officers may, for the purpose of avoiding fractions in computation, add not more than 1 per cent. to the amount of the several taxes to

References for Points in Headnotes

[1, 2, 6] 51 Am. Jur., Taxation, §§ 1221, 1222, 1225, 1226, 1237.

[1, 2, 6] Construction and application of statutes denying remedy by injunction against assessment or collection of tax.   108 A.L.R. 184.

[3] 51 Am. Jur., Taxation, §§ 1229, 1238.

[4] 51 Am. Jur., Taxation, § 1236.

be raised, and where such percentage is added without discriminating against a taxpayer, such taxpayer would not thereby establish ground for equitable relief from tax assessed (1 Comp. Laws 1929, § 3428, as last amended by Act No. 230, Pub. Acts 1943).

5. SAME—ASSESSMENT—HOME-RULE CITY—COUNTY.

Where city taxes became due on July 1st and State, county and school taxes on December 1st and the State tax commission, finally fixed the assessed valuation some three months after the assessment and tax rolls had been delivered to the tax-collecting officers of home-rule city, the commission's action in changing the assessed valuation cannot affect them for city purposes and since there cannot be one set of valuations for city purposes and another set of valuations for county purposes, there was no deliberate and willful intent on the part of the assessing officer to disregard his duty in making assessments for county purposes at same valuation as used for city purposes establishing a ground for equitable relief to taxpayer (1 Comp. Laws 1929, § 3507).

6. SAME—PAYMENT UNDER PROTEST—INJUNCTION.

Where, without undue hardship, taxpayer could have paid taxes, assessed under the general property tax law, under protest and sued city, if it had meritorious claims, the taxpayer had an adequate remedy at law and dismissal of bill to enjoin collection of tax was proper (1 Comp. Laws 1929, § 3507).

Appeal from Gogebic; Brennan (Leo J.), J., presiding. Submitted October 14, 1948. (Docket No. 49, Calendar No. 44,196.) Decided January 13, 1949.

Bill by Sunday Lake Iron Company, a Michigan corporation, against City of Wakefield, a municipal corporation, and others to enjoin collection of tax. Decree for defendants. Plaintiff appeals. Affirmed.

*E. W. Massie*, for plaintiff.

*Robert A. Burns* (*Wm. G. Cloon*, of counsel), for City of Wakefield and Wakefield Township School District.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons,* Chief Assistant Attorney General, for defendant Auditor General.

Sharpe, C. J. This is a suit to enjoin the collection of taxes. The essential facts are not in dispute. The plaintiff is an iron mining corporation organized and existing under and by virtue of the laws of the State of Michigan and operates mines within the city of Wakefield under leases. The city of Wakefield is a municipal corporation existing under and by virtue of the home-rule act with a charter which became effective March 16, 1920. The school district of the township of Wakefield is also a municipal corporation embracing a certain area of the city of Wakefield and township of Wakefield. The county of Gogebic is a municipal corporation. Louis A. Filippini is its county treasurer and Murl K. Aten is the auditor general of the State of Michigan.

On January 12, 1943, the electors of the school district voted a 16-mill tax limitation for school purposes for a period of five years from and after July 1, 1943. The assessed valuation of the city of Wakefield for the year 1946, as equalized by the board of supervisors was $5,136,160 representing $4,430,870 realty and $705,290 personalty. The assessed valuation as finally fixed by the State tax commission on September 30, 1946, amounted to $4,911,160 consisting of $4,205,870 realty and $705,290 personalty.

At the time the city taxes were spread and assessed, the same were spread and assessed upon an assessed valuation of $5,136,160. On June 26, 1946, the city treasurer was authorized and given a warrant to collect taxes including general city taxes $102,723.20, garbage tax of $9,800, reassessment tax of $6,013.23 and excess of roll tax of $949.13, which total tax was $119,485.56. On No-

vember 29, 1946, the city treasurer was given a warrant to collect county tax, county road tax, county reassessment tax, school tax and school reassessment tax.

City taxes of the city of Wakefield under section 15 of chapter 22 of the city charter become due and payable on July 1st of each year and are payable without penalty up to and including the 1st day of August with a collection fee of one per cent. State, county and school taxes are due and payable in the city of Wakefield on the 1st day of December, with a collection fee of one per cent. until the 10th of January.

On or about July 1, 1946, the tax-collecting officer of the city of Wakefield made demand upon plaintiff for the payment of taxes on its real and personal property. On or about July 31, 1946, plaintiff made application to the tax-collecting officer of the city of Wakefield to pay what it claimed to be the lawful taxes payable by it upon its real and personal property. It tendered a check to the tax-collecting officer in the amount of $52,667.76 and at the same time presented to him a letter which reads as follows:

"The Sunday Lake Iron Company, pursuant to section 53 of the general property tax law,* hereby makes application to pay the 'city tax' levy for city purposes made by the city of Wakefield for the year 1946, of twenty (20) mills upon each dollar of assessed valuation, on its properties, both real and personal, as appears on the 1946 assessment roll of the city of Wakefield, plus one (1%) per cent. collection fee provided by the city charter, and requests receipt for such payment in accordance with section 53 of the general property tax law of the State of Michigan.*

---

*See 1 Comp. Laws 1929, § 3444, as amended by Act No. 159, Pub. Acts 1945 (1 Comp. Laws 1948, § 211.53 [Comp. Laws Supp. 1945, § 3444, Stat. Ann. 1947 Cum. Supp. § 7.97]).—Reporter.

"The Sunday Lake Iron Company's check in the amount of $52,667.76, for such purpose is tendered herewith.

"The Sunday Lake Iron Company, considers the proposed tax levies termed 'reassessment tax' levy, 'garbage tax' levy, and the added 'excess of roll,' which have been included on the 1946 assessment roll illegal and in excess of the taxing limitations of the city of Wakefield."

The tax-collecting officer accepted plaintiff's check and certified as follows:

"I hereby certify that application was made to pay all taxes and special assessments due and payable at this office on the description shown in this receipt except the 'garbage tax' levy, 'reassessment tax' levy and the 'excess of roll'" charge added to the 'city tax' levy."

It also appears that on or about the first day of December, 1946, the tax-collecting officer made demand upon plaintiff for the payment of taxes and charges authorized for school and county purposes; that on January 7, 1947, plaintiff made application to the tax-collecting officer to pay what it considered the lawful taxes levied against its real and personal property in the city of Wakefield for the year 1946 and tendered the sum of $68,468.09 and presented a written request for certification as had been done for the city taxes. The tax-collecting officer accepted the sum of money above mentioned and certified as follows:

"I hereby certify that application was made to pay all taxes and special assessments due and payable at this office on the description shown on this receipt, except 'county reassessment tax', 'county road reassessment tax', 'school reassessment tax', 'city reassessment tax', 'garbage tax' the 'excess of roll' charge added to the 'city tax' levy, and excepting the levy in excess of a 10-mill rate fixed by the county

tax allocation board of Gogebic county for 'county' and 'county road tax'."

On March 1, 1947, there was returned to the county treasurer by the city treasurer of the city of Wakefield on the delinquent tax roll of the city of Wakefield for the year 1946, unpaid taxes chargeable to plaintiff company in the amount of $14,765.70 for county tax, county road tax, county reassessment tax, school tax, school reassessment tax, city reassessment tax, city garbage tax and city tax.

After the present suit was instituted, a pretrial conference was held following which a written stipulation was entered into and by which the only questions necessary to decision relate to the "garbage tax," "excess of roll tax," "county tax," and "county road tax" as well as defendants' claim that plaintiff has an adequate remedy at law.

In its bill of complaint, plaintiff states:

"(12) Plaintiff further says that said purported 'garbage tax' levy (placed on the tax roll of the city of Wakefield for the year 1946) is invalid and in excess of the charter limitation of said city of Wakefield and contrary to the provisions of Act No. 279, Pub. Acts 1909 (home-rule act), as amended, and in excess of the authorized mill rate of 20 mills for city purposes fixed and determined by the tax allocation board of the county of Gogebic, Michigan.

"(13) Plaintiff further shows that said 'excess of roll' charge purported to be levied and assessed against the real and personal property of the plaintiff on the tax roll of said city of Wakefield for the year 1946 is invalid for the reason that said charge is without warrant of law and results in a levy in excess of 20 mills on the real and personal property of the plaintiff; further, that said 'excess of roll' charge on the tax roll for the year 1946, purportedly authorized by the city commission of the city of Wakefield, is arbitrary and is added to the amount of taxes payable by the plaintiff and is in excess of the

20 mills allowed by the charter of said city of Wakefield, and the Act No. 279, Pub. Acts 1909, as amended (home-rule act).   *   *   *

"(17) Plaintiff further shows that the said purported 'reassessment tax,' 'garbage tax,' 'excess of roll' charge and the balance of the county and county road tax over and above the 10-mill levy returned delinquent by the said assessing officer of the said city of Wakefield to the treasurer of said county of Gogebic, Michigan, are now claimed to be a lien against the property, both real and personal of the plaintiff, and constitute an unlawful and improper claim or lien against said property which ought to be forever set aside and decreed to be null and void."

At the hearing before the trial court, plaintiff urged:

"(a) That the 'garbage tax' levy returned delinquent against the real and personal properties of the plaintiffs on the 1946 tax roll of the city of Wakefield is invalid and illegal and should be canceled because the purported 'garbage tax' levy results in a tax rate against the real and personal properties of the plaintiffs in excess of the 20-mill limitation for municipal purposes as provided for by section 2 of chapter 21 of the city charter of the city of Wakefield, and because it results in a tax rate and levy in excess of and in violation of section 3 of Act No. 279, Pub. Acts 1909, as amended,* (home-rule act) and section 21 of article 10 of the Constitution of the State of Michigan; and further, because to permit the enforcement of such excessive levy would result in the taking of the properties of the plaintiffs without due process of law.

"(b) That the so-called 'excess of roll' charge levied and returned delinquent against the real and personal properties of the plaintiffs on the assessment, tax and delinquent rolls of the city of Wakefield for the year 1946 is without authority or war-

---

* 1 Comp. Laws 1929, § 2230 (1 Comp. Laws 1948, § 117.3 [Stat. Ann. § 5.2073]).—REPORTER.

rant in law, and contrary to the provisions of section 39 of the general tax laws of the State of Michigan; and because it results in a tax levy in excess of the maximum tax limitations provided by the charter of the city of Wakefield, the general statutes, and the Constitution of the State of Michigan; and to permit the enforcement and collection of such charge would result in the taking of the properties of the plaintiffs without due process of law.

"(c) That the levy of .4581 mills for county purposes in excess of the 10-mill rate fixed by the county tax allocation board for county purposes is illegal, and that the 'county tax' and 'county road tax' returned delinquent against the properties of the plaintiffs for the year 1946 are without warrant in law and should be cancelled and discharged; that the assessing and tax-collecting officers of the city of Wakefield ignored sections 12 and 13 of Act No. 62, Pub. Acts 1933, as amended,* and assessed the full amount of the county taxes, disregarding entirely the 10-mill limitation rate fixed by the county tax allocation board, and that at the time the county taxes were levied on the 1946 tax roll of the city of Wakefield the assessed valuation of the Plymouth Mining Company property described as the north half of the southeast quarter, and the northeast quarter of the southwest quarter of sec. 18–47–45, had been reduced in the sum of $225,000 by the State tax commission."

The trial court entered a decree dismissing plaintiff's bill of complaint and in an opinion stated:

"A court of equity should not interfere with the collection of taxes unless its jurisdiction is clearly ascertainable in the pleadings and proofs. The tax system should not be disrupted and the orderly processes of raising public revenues interfered with unless those asking relief come under at least one of the recognized heads of equity jurisdiction.

---

* See 1 Comp. Laws 1948, § 211.212 (Comp. Laws Supp. 1945, § 3551–32, Stat. Ann. 1947 Cum. Supp. § 7.239).—Reporter.

"After careful scrutiny of the pleadings and a consideration of the stipulated evidence, the court here points out that the plaintiffs have not shown their properties to be exempt from taxation, that there has been any fraud involved, or that they face any imminent or irreparable injury.

"The questions raised by the plaintiffs involve legal and not equitable principles. They contend that the taxes complained about should be cancelled because they have been assessed and levied without statutory or constitutional authorization. They might have proceeded under the provisions of 1 Comp. Laws 1929, § 3444, as amended, to test the validity and legality of these assessments and taxes. *Manufacturers National Bank of Detroit* v. *City of Detroit,* 285 Mich. 273; *Congregation Ben Jacob* v. *City of Detroit,* 299 Mich. 652; *City of Birmingham* v. *Oakland County Supervisors,* 276 Mich. 1.

"It is the opinion of the court that the plaintiffs had, or do have, an adequate remedy at law; consequently the bills of complaint are both dismissed. As there are matters of public interest involved, no costs will be awarded in either case."

The relief asked for by plaintiff is the cancellation of purported liens which appear on the delinquent tax roll for the year 1947 for taxes for the year 1946 against the personal and real property of plaintiff. Plaintiff urges that it is not necessary to resort to an injunction in order that it be granted adequate relief. We note that in the stipulated facts defendants reserved the right to rely upon the defense that plaintiff has an adequate remedy at law.

Section 3507, 1 Comp. Laws 1929* (Stat. Ann. § 7.168), provides:

"No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act."

We have not always construed the above as an absolute prohibition. In *Manufacturers National*

---

* 1 Comp. Laws 1948, § 211.114.—Reporter.

*Bank of Detroit* v. *City of Detroit,* 285 Mich. 273, 277, we said:

"Since it is a matter of great importance in the administration of public affairs (*City of Birmingham* v. *Oakland County Supervisors,* 276 Mich. 1), the levy or collection of taxes should not be restrained by injunction, at least other than in exceptional cases where denial of injunctive relief would result in irreparable injury. * * *

"See, also, *City of Detroit* v. *Wayne Circuit Judge,* 127 Mich. 604; *Henry* v. *Gregory,* 29 Mich. 68. Especially should the law as above stated be followed in this jurisdiction wherein by statute it is provided that an injunction shall not issue to stay proceedings for the assessment or collection of taxes. 1 Comp. Laws 1929, § 3507 (Stat. Ann. § 7.168). Nothing appears in this record indicating that plaintiff would have suffered any unusual hardship if, as it had a right to do, it had paid the tax under protest and thereafter proceeded in an action at law to recover the amount paid if the protest made were meritorious. Aside from appellant's erroneous contention that it did not have an adequate remedy at law, there is nothing in this record to sustain the claim that equity has jurisdiction. The circuit judge was right in concluding that plaintiff had an adequate remedy at law and in entering a decree dismissing its bill of complaint."

See, also, *Congregation Ben Jacob* v. *City of Detroit,* 299 Mich. 652; *City of Birmingham* v. *Oakland Count Supervisors,* 276 Mich. 1.

Plaintiff urges that all of defendants, excepting the auditor general, having filed cross bills asking for affirmative relief against plaintiff cannot now claim that plaintiff has an adequate remedy at law.

In the stipulation of facts, we find the following:

"It is further stipulated by and between the parties, by and through their respective attorneys, that the defendant city of Wakefield and defendant Wake-

field township school district stand on and assert their defense that the plaintiffs have an adequate remedy at law, and that any agreement made and entered into as to the so-called 'reassessment tax' phase of the case does not affect nor prejudice the rights of the defendant city of Wakefield and defendant Wakefield township school district to raise and assert the defense that the plaintiffs have an adequate remedy at law as to the so-called 'garbage tax' and 'excess of roll' charge and that in asserting said defense as to said so-called 'garbage tax' and 'excess of roll' charge, that if the court finds that the plaintiffs have an adequate remedy at law, and that the bills of complaint are dismissed, that the parties hereto by their several attorneys agree that the so-called 'reassessment tax' phase of the case will be settled and disposed of upon the basis outlined and set forth in paragraphs 1 and 2, *supra,* of this stipulation."

In view of the above stipulation, we deem it proper to consider the question of "an adequate remedy at law."

Plaintiff asserts that there has been a deliberate and willful intent on the part of the local assessing and tax-collecting officers of the city of Wakefield to disregard the procedure and duty with reference to the assessing of mines and the levying and collection of taxes in that the local assessor and board of review arbitrarily refused to accept the recommended values made by the State geologist, pursuant to Act No. 159, Pub. Acts 1945,* in the assessment of mineral valuations on certain property of the Plymouth Mining Company located within the city of Wakefield and arbitrarily placed a mineral assessed valuation for the year 1946 thereon of $225,-000, above the assessed valuation determined and recommended by the State geologist; and, notwith-

---

* This act amended 1 Comp. Laws 1929, § 3444, among others.—Reporter.

standing the correction made on the roll by the State tax commission, persisted in levying a 10-mill rate on a total assessed valuation in the city for the year 1946, which included the illegal and excessive assessment of $225,000.

It appears that the State geologist placed a valuation on the Plymouth Mining Company's property less than the amount so placed by the assessor and the board of review of the city of Wakefield; that the city of Wakefield protested such valuation to the State tax commission; that the State tax commission issued an order on August 13, 1946, noticing the review of the assessment on September 5, 1946, and on September 30, 1946, issued an order reducing the valuation placed upon the Plymouth Mining Company's property by the city assessor; and that on June 26, 1946, the tax roll of the city of Wakefield had been placed in the hands of the collecting officer. The board of review had the problem of accepting the valuation of the State geologist or another person employed by the city assessor. We cannot say it was fraudulent on the part of the board of review to fail to accept the recommendation of the State geologist.

Plaintiff also urges that the "excess of roll" charge is a fraudulent imposition upon the taxpayer, wholly unauthorized, illegal and results in a levy in excess of the 20-mill limitation of the city charter.

Under 1 Comp. Laws 1929, § 3428, as amended by Act No. 234, Pub. Acts 1941, and Act No. 230, Pub. Acts 1943* (Comp. Laws Supp. 1945, § 3428, Stat. Ann. 1947 Cum. Supp. § 7.80), it is provided, in part, as follows:

"For the purpose of avoiding fractions in computation, the assessor may add to the amount of the several taxes to be raised not more than 1 per cent.;

---

* 1 Comp. Laws 1948, § 211.39.—Reporter.

said excess shall belong to the contingent fund of the township, city or village; such taxes shall be separately assessed and shall be entered in separate columns, or if authorized by a resolution of the board of supervisors of the county adopted by a majority of the members-elect thereof, such taxes in said county shall be entered as 1 total sum: *Provided,* That if such taxes are entered as 1 total sum, there shall be printed upon each tax receipt the percentage which each such tax is of said total sum."

Under the above authority the assessing officer is permitted to add not more than one per cent. to the amount of the several taxes to be raised. The record does not show that the assessing officer added more than the one per cent. permitted by the statute or that the formula used was discriminatory as against plaintiff company.

It is also urged that the "county tax" and the "county road tax" is illegal. Since the State tax commission cannot affect the assessment and tax rolls as to city purposes after the same have been delivered to the tax-collecting officer on or before July 1, 1946, and since there cannot be one set of valuations for city purposes and another set of valuations for county purposes as determined in *Board of State Tax Commissioners* v. *Cady,* 124 Mich. 683, it cannot be said that there was a deliberate and willful intent upon the part of the assessing officer to disregard his duty in making assessments.

In the case at bar plaintiff could have paid the taxes under protest and sued the city if it had meritorious claims. It has not been shown that such proposed course of action would have entailed any unusual hardship upon plaintiff. We are in accord with the holding of the trial court that plaintiff had an adequate remedy at law.

The decree is affirmed, with costs of both courts to defendants.

BUSHNELL, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.

DETHMERS, J., did not sit.