**Harry B. HELMSLEY, Plaintiff,**

v.

**CITY OF DETROIT, a municipal corporation of the State of Michigan, Defendant.**

Civ. A. No. 21596.

United States District Court
E. D. Michigan, S. D.

June 8, 1962.

Henry J. Freud, James P. Mattimoe, Detroit, Mich., for plaintiff.

Nathaniel H. Goldstick, Corp. Counsel, Irving S. Wolfe, Nick Sacorafas, Julius C. Pliskow, Asst. Corp. Counsel, Detroit, Mich., for City of Detroit.

FREEMAN, District Judge.

After having exhausted all State administrative remedies, plaintiff filed this

declaratory judgment action under 28 U.S.C.A. § 2201 to declare the assessments for 1960 and 1961 *ad valorem* taxes on certain industrial real estate in the City of Detroit owned by plaintiff, as being in violation of the due process and equal protection clauses of the Fourteenth Amendment, and asks that such assessments be fixed by the Court in the amount paid by plaintiff for the property in 1960.

The complaint alleges that plaintiff purchased this property on the open market in 1960 for the sum of $500,000.00, which is the maximum cash or market value of the property; that the Detroit Board of Assessors assessed the property in the amount of $3,891,260.00 for the year 1960, which was reduced to $3,532,-350.00 on plaintiff's appeal to the State Tax Commission, and this latter sum represented the amount of the 1961 assessment by defendant's assessors, which was sustained by the State Tax Commission in rejecting plaintiff's appeal without a hearing; that the Constitution of Michigan and the charter of the City of Detroit require that the assessment of all real and personal property shall be uniform and at cash value, and the Michigan general property tax law requires that all property be assessed at true cash value; that most of the property in the City of Detroit is assessed for less than the true cash or market value; and that such assessments of plaintiff's property at more than seven times its true cash value, due to the arbitrary and capricious action of defendant's assessors, are fraudulent and amount to the taking of plaintiff's property without compensation, deprive plaintiff of his property without due process of law, and deny plaintiff equal protection of the law, in violation of plaintiff's rights under the Fourteenth Amendment.

Defendant's answer alleges that plaintiff's property was properly assessed, in accordance with the provisions of the Constitution and laws of the State of Michigan and the charter of the City of Detroit, and raises jurisdictional issues.

The parties agree that jurisdiction must be established under either diversity of citizenship, 28 U.S.C.A. § 1332, or the existence of a Federal question, 28 U.S.C.A. § 1331, and that the Declaratory Judgment Act creates a remedy but does not confer jurisdiction. Defendant does not deny diversity jurisdiction but does deny the existence of a Federal question under 28 U.S.C.A. § 1331, and contends that 28 U.S.C.A. § 1341 (the Johnson Act) deprives this Court of jurisdiction in a declaratory judgment action.

At a pre-trial conference, the defendant raised the question of jurisdiction but refused to file a motion to dismiss the complaint on such ground because of policy considerations, whereupon the Court acted *sua sponte* with respect to such issue of jurisdiction, which is the only question here involved.

■ There is diversity jurisdiction. Plaintiff is a citizen of New York, and for purposes of diversity jurisdiction the defendant, City of Detroit, is a citizen of the State of Michigan. Mayor and City Council of Baltimore v. Weinberg, D.C., 190 F.Supp. 140; 3 Moore's Federal Practice (2nd Ed.), pp. 1384–1385.

■ There is also Federal question jurisdiction. Plaintiff claims that the assessment on its property is arbitrary and discriminatory. This allegation necessarily involves the construction and interpretation of the due process and equal protection clauses of the Fourteenth Amendment.

Chief Judge Miller (C.A. 6), stated in Shelby County, Tennessee v. Fairway Homes, Inc., 285 F.2d 617, at p. 618:

"It is well settled that a case may be said to arise under the Constitution or laws of the United States whenever its correct decision depends upon the construction of either, or when the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, and

sustained by the opposite construction."

Title 28 U.S.C.A. § 1341 (known as the Johnson Act) provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Plaintiff contends that the Johnson Act does not apply because (1) injunctive relief is not sought, and (2) plaintiff does not have a plain, speedy or efficient remedy in the State courts.

The Supreme Court has not yet decided the precise question of whether the Johnson Act should be construed to prohibit a declaration by Federal courts concerning the invalidity of a State tax by declaratory judgment, but has held that:

"* * * those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299, 63 S.Ct. 1070, 87 L.Ed. 1407.

See, also, 1 Moore's Federal Practice, pp. 2285–6.

■ The court in the Great Lakes case makes it clear that where the State affords an adequate remedy to the taxpayer, a Federal District Court should not take jurisdiction, and on pp. 300–301, on p. 1074 of 63 S.Ct. of the opinion states:

"With due regard for these considerations, it is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court."

In Great Lakes, the court also makes it clear that the decision was to apply to municipal as well as state taxes, and on p. 298, on p. 1073 of 63 S.Ct. says:

"Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or *municipal tax* is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved." (Emphasis supplied)

Plaintiff admits that § 7.97 Mich.Stat. Ann., Comp.Laws 1948, § 211.53, which requires the taxpayer to pay the disputed tax under protest and to sue at law within 30 days after payment to recover the same, gives him a remedy, but maintains (p. 14 of plaintiff's brief) that this remedy is inadequate because "only one taxpayer (at least to our knowledge) coming before the Michigan Supreme Court for recovery of an illegal overassessment has prevailed."

■ However, an observation of the Michigan statutes and authorities reveals that Michigan does provide an adequate remedy in tax cases. If an assessment and collection of a particular tax will cause irreparable harm to the taxpayer, he can obtain injunctive relief, Sunday Lake Iron Co. v. City of Wakefield, 323 Mich. 497, 35 N.W.2d 470. On the other hand, a taxpayer can challenge the assessment before the Board of Review and by appeal to the State Tax Commission, although there is no judicial review of the Commission's determination as to the validity or propriety of the assessment prior to payment of the tax. Dossin's Food Products, Inc. v. Michigan State Tax Commission, 360 Mich. 312, 103 N.W.2d 474. However, the taxpayer

can pay the tax under protest, and within 30 days thereafter institute action in the State courts for a refund. § 7.97 M.S.A. Consequently, a Michigan taxpayer is protected from paying a tax which will cause him irreparable harm, and he has administrative procedures available to him before payment of the tax and judicial procedures available for a refund after payment of the tax.

In support of his position plaintiff contends:

1. That the case of Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101, reversed the reasoning of Great Lakes Dredge & Dock Co. v. Huffman, supra, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; and

2. That the decision of Judge Kaess in Wyandotte Chemical Corporation v. City of Wyandotte, D.C., 199 F.Supp. 582, and the case of Chicago, Duluth & Georgian Bay Transit Co. v. Nims, D.C., 140 F.Supp. 920, affirmed (C.A. 6), 252 F.2d 317, are controlling of the instant case.

Spector Motor Service, Inc. was a suit to enjoin the enforcement of a State tax and for a declaratory judgment involving a taxpayer's claim that the tax did not apply to it, in which the Court noted that "federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law," (323 U.S. p. 105, 65 S.Ct. p. 154) and merely held that the Federal District Court "had jurisdiction to entertain this bill and to give whatever relief is appropriate despite the Johnson Act and Great Lakes Dredge [& Dock] Co. v. Huffman, 319 U.S. 293, [63 S.Ct. 1070, 87 L.Ed. 1407,] because of the uncertainty surrounding the adequacy of the Connecticut remedy" and remanded the case to the District Court with directions to retain the suit pending the determination of proceedings in the State court.

The Wyandotte Chemical case was another Johnson Act case in which the Court found the State remedy inadequate. Judge Kaess felt that the procedure under § 7.97 M.S.A. of paying the tax under protest and suing within 30 days after payment to recover the same was inadequate in that case because the City of Wyandotte was not financially able to pay a judgment equalling the claim of the taxpayer. In the instant case there is no allegation nor contention that the City of Detroit will not be able to pay any judgment the plaintiff might recover in a suit under the State statute.

Chicago, Duluth & Georgian Bay Transit Co. v. Nims, supra, was a case in which the court never reached the question of the adequacy of the Michigan remedy of suing for a refund after having paid the State sales tax. As a matter of fact, the opinion of Judge Thornton of this Court, 140 F.Supp., on pp. 923–4, in comparing the remedy available in Michigan with that available in the Pennsylvania case of City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628, observed:

> "Because of the nature of the proceedings available in the State of Pennsylvania whence that cause arose, and the limitations found therein, the Supreme Court of the United States deemed the available State relief to be inadequate. The same limitations do not exist with respect to the relief available through State procedures in the State of Michigan."

For the reasons herein stated, this Court concludes that the complaint must be dismissed for lack of jurisdiction.

An appropriate Order may be presented.